```
 1                     UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF VIRGINIA
 2                         ALEXANDRIA DIVISION

 3   ASSOCIATED RECOVERY, LLC,    )  Case 1:15-cv-01723
                                  )
 4                 Plaintiff,     )
                                  )
 5        v.                      )  Alexandria, Virginia
                                  )  April 15, 2016
 6   JOHN DOES 1-44, et al.,      )  10:36 a.m.
                                  )
 7                 Defendants.    )
                                  )  Pages 1 - 12
 8

 9        TRANSCRIPT OF DEFENDANTS' MOTIONS TO DISMISS

10          BEFORE THE HONORABLE ANTHONY J. TRENGA

11             UNITED STATES DISTRICT COURT JUDGE

12
     APPEARANCES:
13
     FOR THE PLAINTIFF:
14
         REBECCA J. STEMPIEN COYLE, ESQUIRE
15       BRANDI M. BRENNER, ESQUIRE
         LEVY & GRANDINETTI
16       1156 Fifteenth Street, N.W., Suite 603
         Washington, D.C.  20005
17       (202) 429-4560

18   FOR THE DEFENDANTS:

19       LORA A. BRZEZYNSKI, ESQUIRE
         DENTONS US, LLP
20       1900 K Street, N.W.
         Washington, D.C.  20006-1102
21       (202) 496-7239

22

23

24

25      COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

 1          THE CLERK:  Civil Action 1:15-cv-1723,

 2 *Associated Recovery, LLC v. John Does 1-44, et al.*

 3          Will counsel please identify themselves for

 4 the record.

 5          MS. STEMPIEN COYLE:  Good morning, Your

 6 Honor.  Rebecca Stempien Coyle from Levy & Grandinetti.

 7 With me is Brandi Brenner on behalf of the plaintiff,

 8 Associated Recovery.

 9          MS. BRZEZYNSKI:  Good morning, Your Honor.

10 Lora Brzezynski of Dentons on behalf of certain

11 defendants.

12          THE COURT:  All right.  We're here on

13 defendants' motion to dismiss or, in the alternative,

14 to transfer to the Northern District of Texas.  I've

15 reviewed the pleadings in this case.  I'd be pleased to

16 hear anything further from counsel that you think is

17 necessary for the Court to consider.

18          MS. BRZEZYNSKI:  Thank you, Your Honor.

19          I'd just like to make a few points for Your

20 Honor.  In particular, I'd like to point out one

21 argument by the plaintiff that, I think, goes to the

22 very heart of this matter.

23          THE COURT:  Before you do that, would you

24 confirm for me how many of the John Does certain

25 defendants constitute.  Your clients which you refer to

 1 as the certain defendants --

 2             MS. BRZEZYNSKI:  Yes.

 3             THE COURT:  -- how many of the domain names

 4 are included within the certain defendants that you

 5 represent?  Is it less than all of them?

 6             MS. BRZEZYNSKI:  It is, yes, less than all of

 7 them.  There were a group of defendants for which we do

 8 not represent for which plaintiff obtained default

 9 judgment against.  We only represent a subset of the

10 full defendants named in the caption.  Does that answer

11 your question, Your Honor?

12             THE COURT:  It does.  How many of your

13 clients are in the Eastern District of Texas

14 proceeding, the *Butcher* case?

15             MS. BRZEZYNSKI:  Eight.

16             THE COURT:  So 8 out of 14?  How many?

17             MS. BRZEZYNSKI:  Twenty-six, Your Honor.  I

18 apologize for not knowing that number off the top of my

19 head.

20             THE COURT:  All right.

21             MS. BRZEZYNSKI:  Eight are also in the

22 *Butcher* case in the Eastern District of Texas.

23             THE COURT:  All right.  As I understand your

24 position, your clients stipulate and agree that any

25 relief with respect to these domain names can be

 1   entered against them by the Northern District of Texas.

 2           MS. BRZEZYNSKI:  That is correct, Your Honor.

 3           THE COURT:  All right.  Please, anything else

 4   you would like to say.

 5           MS. BRZEZYNSKI:  You know, with that, I think

 6   I'll sit down.

 7           THE COURT:  Okay.

 8           MS. BRZEZYNSKI:  Thank you.

 9           THE COURT:  All right.  Counsel.

10           MS. STEMPIEN COYLE:  Good morning, Your

11   Honor.  Just to --

12           THE COURT:  Just the sheer posture of this

13   case, I'm sure you appreciate, makes it difficult for

14   the Court to understand why it's here.

15           MS. STEMPIEN COYLE:  Yes.  I understand, Your

16   Honor.

17           I want to just clear up one -- to the fact

18   that it's relevant, I believe it's 14 of the domain

19   names are defaulted.  Counsel represents 26.  There are

20   two that default hasn't been entered yet because we

21   weren't sure if they were going to be represented or

22   not.  I just want to make the Court aware of that, and

23   that will be forthcoming.

24           The stipulation to jurisdiction in the

25   Northern District of Texas is something that is a new

 1 factual matter.

 2          THE COURT:  Default judgment has been entered

 3 against --

 4          MS. STEMPIEN COYLE:  I believe Judge Anderson

 5 issued his report and recommendation for the default

 6 judgment against, I believe, 14 of them.  We are

 7 waiting for the time period for them to protest to tidy

 8 up.  I think it will come sometime this coming week

 9 before we bring it before Your Honor to tie up.

10          THE COURT:  All right.  So if this Court were

11 to transfer the case, what would you propose as to

12 those defaulting defendants?

13          MS. STEMPIEN COYLE:  For the defaulted

14 defendants, Your Honor, we would propose that they stay

15 here because they are *in rem*.  The whole reason for any

16 sort of transfer to the Northern District of Texas

17 would be the *in personam* jurisdiction.  Without *in*

18 *personam* jurisdiction, the ACPA requires that the

19 *in rem* stay where the domain registry resides, which is

20 here in Virginia.  Since we have no indication that the

21 defaulted parties have any personal jurisdiction in

22 Texas, the location for the default must remain here.

23          THE COURT:  Do you know the identities of the

24 owners of those domain names?

25          MS. STEMPIEN COYLE:  Not with certainty, Your

1  Honor.  A lot of them, the information provided is

2  questionable.  Addresses are incomplete or almost

3  clearly inaccurate and misleading.  For the most parts,

4  they have been completely silent in response.

5           We also did not know the identities of --

6  other than from the WhoIs records, we did not know the

7  identities of these certain defendants prior to the

8  filing.

9           THE COURT:  How were they served?

10           MS. STEMPIEN COYLE:  We've been sending

11  e-mail to the e-mail address listed in the WhoIs, as

12  well as postal mail to that same address.  We also did

13  a service by publication pursuant to the court order.

14           THE COURT:  All right.  Thank you.

15           Anything else?

16           MS. STEMPIEN COYLE:  The only other thing the

17  plaintiff would bring up is that should these certain

18  defendants be transferred to Texas, we would just like

19  to be clear that each of the individual certain

20  defendants does understand and does stipulate to the

21  personal jurisdiction and the jurisdiction of the Texas

22  court to enter the relief.

23           I understand it's a very overwhelming and

24  maybe jumbled situation, it seems, for defendants'

25  counsel based on the papers we've seen from them to

 1 date and the conversations we've had with them.  I

 2 understand they are all primarily in China, if not all

 3 in China.  It seems that there is one -- I think he's a

 4 defendant who is organizing or kind of acting as a

 5 point person for the remaining of the defendants.  We

 6 would just like to be clear that it is not just that

 7 point person who is stipulating on behalf of all of the

 8 defendants, but that each individual defendant is

 9 stipulating to the jurisdiction of Texas.

10           THE COURT:  That's what I understand.

11           MS. STEMPIEN COYLE:  Thank you, Your Honor.

12           THE COURT:  All right.  Anything further?

13           MS. BRZEZYNSKI:  Yes, Your Honor.  I think

14 it's worthwhile to clarify two points.  First, as to

15 Xiaofeng Lin, who is the owner of five of the domain

16 names, he is actually on the face of one of the domain

17 name transfer agreements.  He has consented to the

18 personal jurisdiction of Texas; thus, there's no *in rem*

19 jurisdiction over him here because there's *in personam*

20 jurisdiction in Texas.

21           THE COURT:  All right.

22           MS. BRZEZYNSKI:  So the case against him

23 cannot stand.

24           As for the remaining domain names that I

25 represent, Your Honor, eight already in the *Butcher*

 1   case and then the other remaining ones, my clients have

 2   stipulated that we will not challenge the jurisdiction

 3   of the Northern District of Texas to order the domain

 4   registrar in Virginia to transfer the domain names if

 5   we do not prevail in Texas.

 6               THE COURT:  On the merits.

 7               MS. BRZEZYNSKI:  On the merits, yes.

 8               THE COURT:  Right.

 9               MS. BRZEZYNSKI:  I must tell you, Your Honor:

10   That is a very, very big issue in the case and one

11   where -- the very beginning of my argument I was saying

12   there's one argument that goes to the heart of

13   plaintiff's case, and that's the assumption that the

14   domain name transfer agreements are invalid and that

15   the receivers on behalf of Novo Point had no right to

16   transfer those agreements.  That is very, very much an

17   issue which the Northern District of Texas has retained

18   exclusive jurisdiction over.

19               In fact, if those domain name transfer

20   agreements were pursuant to the Northern District of

21   Texas and there's an order that says so and are, in

22   fact, valid, then Novo Point had nothing to transfer,

23   no asset to transfer to Associated Recovery at all,

24   Your Honor.

25               THE COURT:  I understand.

```
 1            MS. BRZEZYNSKI:  You know, it also begs the

 2   question:  Who is Associated Recovery?  Is it really

 3   Jeff Baron pulling the strings, which we have reason to

 4   believe, hiding behind the jurisdiction of the ACPA to

 5   try to avoid at all cost the Northern District of Texas

 6   where he has been, essentially, called a vexatious

 7   litigant repeatedly by that court?

 8            THE COURT:  All right.

 9            MS. BRZEZYNSKI:  Thank you, Your Honor.

10            THE COURT:  Thank you.

11            This case is before the Court on defendants'

12   motion to dismiss or, in the alternative, to transfer

13   venue to the Northern District of Texas.  The Court has

14   reviewed the briefing and the other information

15   available to it.  It concludes that the case should be

16   transferred to the Northern District of Texas.

17            In that district, there has been years of

18   related proceedings that have occurred, as well as the

19   entry of an order directing that issues raised in this

20   case be filed in that court.  Those proceedings have

21   included both a court ordered and supervised

22   receivership under which the domain names that are the

23   subject of this litigation were sold by a receiver

24   appointed in that district and also the unwinding and

25   winding down of that receivership as directed by the
```

 1  Fifth Circuit.

 2          Those proceedings, as I've indicated, have

 3  included a certain order dated March 2015 related to

 4  that winding down of the receivership that explicitly

 5  stated that the Northern District of Texas retains

 6  exclusive jurisdiction over, among other things, any

 7  controversy that arises from or relates to the

 8  receivership or actions of the receivership or his

 9  professionals.

10          This action is squarely within the scope of

11  that order, which was entered against a party through

12  whom the plaintiff claims its rights; the domain names

13  that were sold in that receivership; and to the extent

14  that the plaintiff challenges the propriety of that

15  order, it should pursue that objection in the Northern

16  District of Texas or the Fifth Circuit.

17          Moreover, there were forum selection clauses

18  appearing in certain assignments entered into by

19  another entity through which plaintiff claims its

20  rights pertaining to some of the domain names at issue

21  here, which specifically designates the Northern

22  District of Texas or Texas state court to hear those

23  disputes.

24          There also appears to be another overlapping

25  lawsuit that the plaintiff has initiated in Texas,

 1  albeit in the Eastern District of Texas, involving many

 2  of the same domain names as those at issue here.

 3          The Court has also considered the plaintiff's

 4  arguments that this case should remain in this district

 5  by virtue of its *in rem* jurisdiction over the domain

 6  names.  Without getting into whether plaintiff's

 7  claims, in fact, appropriately arise under the

 8  anticybersquatting statute, it appears in any event

 9  that there's no reason to think that personal

10  jurisdiction cannot be obtained over these certain

11  defendants who claim these domain names as evidenced by

12  both plaintiff's claims in the Eastern District of

13  Texas against certain of these certain defendants and

14  also the certain defendants' stipulation that they

15  consent to the jurisdiction of the Northern District of

16  Texas for the purposes of providing any remedy with

17  respect to the transfer of these domain names.

18          In that regard, the anticybersquatting act

19  specifically contemplates that such claims will be

20  asserted where there is personal jurisdiction as the

21  preferred course reserving *in rem* jurisdiction for

22  those cases where personal jurisdiction is not

23  obtainable.

24          For these same reasons, the Court concludes

25  that transfer under 28 U.S.C. 1404(a) is appropriate.

 1  Based on the record before the Court, the Court

 2  concludes that the action could have been filed in the

 3  Northern District of Texas.  The convenience of the

 4  parties and witnesses are facilitated in Texas, and the

 5  interest of justice is served by transfer to Texas.

 6          Accordingly, the Court will grant the motion

 7  and transfer this case as to the certain defendants to

 8  the Northern District of Texas.

 9          I must say:  I hadn't focused on the fact

10  that some of these defendants had already defaulted in

11  this district.  I'm not going to transfer at this time

12  this case as to those defaulting defendants, but the

13  transfer order will be limited to the claims against

14  the certain defendants in this case.

15          MS. BRZEZYNSKI:  Thank you, Your Honor.

16          THE COURT:  The Court will enter an order.

17          Anything further?

18          MS. STEMPIEN COYLE:  Thank you, Your Honor.

19          THE COURT:  All right.  Thank you.

20          Counsel is excused.

21          The Court will stand in recess.
        ------------------------------------
22              Time:  10:49 a.m.

23      I certify that the foregoing is a true and
      accurate transcription of my stenographic notes.
24
                                    _____/s/_____
25                                  Rhonda F. Montgomery, CCR, RPR


    Rhonda F. Montgomery   OCR-USDC/EDVA   (703) 299-4599